CENTRAL NAT. FIRE INS. CO. OF CHICAGO, ILL., v. BLACK.

(Circuit Court of Appeals, Ninth Circuit. February 1, 1915.)

No. 2395.

1. TRIAL ☞140—CREDIBILITY OF WITNESSES—IMPEACHMENT—QUESTION FOR JURY.

Whether defendant had succeeded in impeaching one of plaintiff's witnesses was for the exclusive determination of the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 334, 335; Dec. Dig. ☞140.]

2. INSURANCE ☞668—LOSS—VALUE OF PROPERTY—QUESTION FOR JURY.

Where, in an action on a policy, there was evidence that the aggregate value of the property destroyed was greater than the amount of the policy, but there was some testimony and some circumstances tending toward the contrary conclusion, the amount of the loss was for the jury.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1556, 1732–1770; Dec. Dig. ☞668.]

3. INSURANCE ☞548—FIRE POLICY—EXAMINATION.

There was no failure on the part of insured· to comply with a provision of the policy that he submit to an examination under oath before a person named by the insurer, where it appeared that no such person had been designated for the purpose.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1354; Dec. Dig. ☞548.]

4. INSURANCE ☞544—LOSS—BOOKS OF ACCOUNT—VOUCHERS—PRODUCTION.

Where insured's books of account, bills, invoices, and vouchers were burned by the fire which destroyed the insured property, his right to recover on the policy was not barred by his failure to produce for examination all books of account, etc., or certified copies thereof, if the originals were lost, at such reasonable places as were designated by the insurer or its representative.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1348; Dec. Dig. ☞544.]

In Error to the District Court of the United States for the Southern Division of the Western District of Washington; Edward E. Cushman, Judge.

Action by William Black against the Central National Fire Insurance Company of Chicago, Ill., a corporation. Judgment for plaintiff, and defendant brings error. Affirmed.

Cole & Cole, of Portland, Or., for plaintiff in error.

J. J. Brumbach, of Ilwaco, Wash., and Elmer M. Hayden, Maurice A. Langhorne, and F. D. Metzger, all of Tacoma, Wash., for defendant in error.

BEFORE GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. This action was brought by the defendant in error against the plaintiff in error upon a policy of fire insurance issued by the latter, insuring Black against all direct loss or damage by fire, with certain exceptions not important to be mentioned, to an amount not exceeding $5,000 "on his stock of merchandise, consist-

ing principally of wines, liquors, cigars, beer, soda and mineral waters, and all other goods, wares, and merchandise not more hazardous, kept for sale by assured, while contained in two-story, shingled roof, frame building, and adjoining and communicating additions thereto, while occupied as saloon, and situated on lot 6, block 6, Tinker's North addition to Long Beach, Pacific county, Wash." That the saloon building and its contents were completely destroyed by fire during the life of the policy is not disputed.

The insurance company by its amended answer set up in defense that the value of the plaintiff's stock of goods did not exceed $1,000 in value at the time of the fire; that the fire "was caused by the act, design, or procurement of the plaintiff and not otherwise"; that the proof of loss made by the insured, which was sworn to by him, did not comply with the requirements of the policy, and that in and by such proof of loss the insured falsely and fraudulently represented that he had on hand in his saloon at the time of the fire wines, liquors, mineral water, and cigars of the value of $7,378.85, which he claimed was covered by the policy, and made and attached to such proof of loss a written statement setting forth various articles of certain specified values, which he claimed were destroyed by the fire, some of which articles did not in fact exist, and the values of those that did exist were falsely sworn to by the assured as being much larger than they really were, and further that there were included in the statement of loss certain specified articles which were not covered by the policy. The defendant company also set up in its amended answer a violation of the terms and provisions of the policy, in that the plaintiff "refused to produce for the examination of this defendant any bills, invoices, or other vouchers of any goods, or certified copies thereof, or any inventory thereof."

The case was tried with a jury, there being much evidence given on behalf of each side. The trial resulted in a verdict for the plaintiff for the full amount of the policy.

The policy was issued June 18, 1912, and was countersigned by the company's local agent at Long Beach, one Kayler. The fire occurred the 27th of the same month. That the company suspected some fraud in respect to the matter is abundantly shown by the evidence, the first item of which is the following telegram, sent by its agent at Long Beach to its agents in Portland, Or.:

"Long Beach, Wn., June 27, '12.

"Davenport, Dooley & Co., Portland, Ogn.: Risk covered by policy 590757 burned this morning prosecuting attorney on spot investigating. Total loss.
"1:11 p. m.                                    P. Kayler, Agent."

The suspicions of the company are further indicated by the visit of its adjuster to Long Beach shortly after the fire without seeing or endeavoring to see Black, although he went there to inquire into the matter of the fire. The record shows that a few days after the fire occurred the plaintiff in the case wrote to the company's agents at Portland this letter:

"Wm. Black, Long Beach, Wash.

July 3rd, 1912.

"Davenport Dooley Co., Portland, Or.—Dear Sir: I have meet with a loss on June 27 with doubtles you have been notified. Now I wish you to send adjuster or represetative as I wish to Clean up premises in order to rebuild.

"Yours Respct.,                     Wm. Black."

To which letter no reply appears to have been received, and on August 19, 1912, the plaintiff wrote to the company's adjuster as follows:

"Long Beach, Wash., Aug. 19th, 1912.

"Mr. W. G. Lloyd, Portland, Ore.—Dear Sir: I have been waiting since June 27 for you to come down & inspect the site of my building that was burnt on that date. I wish to clear up the rubbish from place but do not want to touch anything till you have been it. Mr. Whalley of the New Hampshire Ins. Co. refers me to you hence this letter. I wish you would make it a point to come as soon as possible.

"Yours Respect'y,                     Wm. Black."

What purports to be an answer to the latter letter, although as printed in the record it is without signature, is as follows:

"August 20th, 1912.

"Mr. Wm. Black, Long Beach, Wash.—Dear Sir: I have your letter of August 19th, relative to purported claim by reason of fire, and in reply I beg to advise as follows: If you have a claim under Pol. No. 590757 issued to you by the Central National Fire Ins. Co. of Chicago, Ill., and Pol. No. 2661130 issued to you by the New Hampshire Fire Ins. Co. of Manchester, N. H., both of which companies I represent and on behalf of said companies I desire to call your attention to the terms and conditions as set forth in lines from 67 to 112, inclusive. You are hereby required to submit proofs of loss as set forth and in accordance with instructions thereby given in said policies, within sixty days of the fire. Upon compliances I will give the matter attention. The said insurance companies, above referred to, hereby neither admit nor deny liability.

"Very truly yours."

August 23, 1912, the plaintiff wrote to the adjuster as follows:

"Wm. Black, Long Beach, Wash.

"Long Beach, Wash., Aug. 23, 1912.

"Mr. Lloyd, Portland, Ore.—Dear Sir: Enclosed please find proofs of loss as requested.

"Yours respect'y,                     Wm. Black."

And again, on August 29, 1912, as follows:

"Wm. Black, Long Beach, Wash.

"Aug. 29th, 1912.

"Davenport Dooley Co., Portland, Or., Agents of Central National Fire Insurance Comp. of Chicago, Ill.—Dear Sir: I hold Policy No. 590757 on this Company and have been awaiting for a settlement of policy since June 27 and think I have been treated veary roten; have had no one to come here to ajust my loss or give me any information. Now I demand an emeadite settlement or I will at once take steps to colect it.

"Yours truly,                     Wm. Black.

please let me here from you at once."

Under date August 31, 1912, but, as shown in the record, without signature, appears this letter:

"August 31st. '12.

"Mr. Wm. Black, Long Beach, Wash.—Dear Sir: I am in receipt of your favor of the 23d, enclosing papers purporting to be proofs of loss under policy No. 590757 and policy No. 2661130 issued to you by the Central National Fire Ins. Co. and the New Hampshire Insurance Co. The same will be given consideration and you will be advised further at the earliest possible moment.
"Very truly yours."

Under date September 10, 1912, also without signature, appears the following:

"September 10th, 1912.

"Mr. Wm. Black, Long Beach, Wash.—Dear Sir: We are in receipt of your favor of August 23d, enclosing papers purporting to be proofs of loss under policy No. 590757 issued to you by the Central National Fire Insurance Company, making claim for loss by fire alleged to have occurred on June 27th, 1912. The said papers cannot be accepted as satisfactory, for the following among other reasons which may subsequently be made to appear. The list of articles enumerated is only a memorized list and also contains articles which are not items of stock. The amount set forth in said list as representing the value are grossly in excess of the true sound value of said articles, alleged to have been destroyed. Under the terms and conditions of your policy you are required to exhibit the last authentic inventory taken of your stock or a certified copy thereof. You will also supply bills of purchases of stock since the last said inventory, or if said bills of purchases have been destroyed then certified copies of the original bills. You are also required to supply a record of your sales made of stock since the date of inventory above referred to. The said papers cannot therefore be accepted as satisfactory and are held subject to your order. This company hereby neither admits nor denies any liability to you.
"Very truly yours."

To the latter letter the following appears to have been sent:

"Wm. Black, Long Beach, Wash.

"Sept. 12th, 1912.

"Mr. W. G. Lloyd, Adjuster Fire Losses, Portland, Or.—Dear Sir: Your letters of Sept. 10th have been refered to my lawyers.
"Yours truly,                                    Wm. Black."

Under date October 9, 1912, also without signature, appears the following:

"October 9th, 1912.

"Mr. Wm. Black, Long Beach, Wash.—Dear Sir: On September 10th, 1912, we wrote you requesting further data and information relative and supplemental to papers filed by you under policy No. 590757 issued to you by the Central National Fire Insurance Co. To this you replied on September 12th, 1912, that you had referred the matter to your lawyers, and since which time nothing further has been heard. If you intend making any claim, we notify you that you comply with our request of September 10th, 1912, above referred to."

To which latter letter the plaintiff replied as follows:

"Wm. Black, Long Beach, Wash.

"Oct. 11th, 1912.

"W. G. Lloyd, Portland, Ore.—Dear Sir: What has struck you? I have complied with the law. Send you with proof of loss witch you refuse to receive as such and claimed in your letter that it was a memorised list. As far as I am or was concerned that letter closed the matter between you and me. I have been treated roten by you. You have never called on me and I never saw you. This has been my first fire and I have had no exsperince in

maters of this kind and want no more. I inshured payed my money and have meet with a loss and want mine and I am going to have it; and take it from me I have furnished you with everything covering this my loss.

"Wm. Black.

"Say you had better save your stamps I will get them just the same with a 2 cent stamp or do you take me for a farmer."

The policy provided, among other things, that the insurer should not be liable beyond the actual cash value of the property at the time of its loss or damage, and that the policy should be void "in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, made before or after a loss." The policy also contained, among others, these further stipulations and conditions:

"If fire occur the insured shall give immediate notice of any loss thereby in writing to this company, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, make a complete inventory of the same, stating the quantity and cost of each article and the amount claimed thereon, and, within sixty days after the fire, unless such time is extended in writing by this company, shall render a statement to this company, signed and sworn to by said insured as to the time and origin of the fire, the interest of the insured and of all others in the property, the cash value of each item thereof, and the amount of loss thereon. * * * The insured, as often as required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examinations under oath by any person named by this company, and subscribe the same, and, as often as required, shall produce for examination all books of account, bills, invoices, and other vouchers, or certified copies thereof, if originals be lost, at such reasonable place as may be designated by this company or its representative, and shall permit extracts and copies thereof to be made."

[1] In the list of the property destroyed by the fire, and claimed to have been covered by the policy, furnished by the assured to the company, were some bottles, towels, etc. It appears from the evidence that the proof of loss was prepared for the assured by Kayler, and although in doing so Kayler was not acting as agent for the insurance company, as the trial court very properly instructed the jury, yet the latter might very well have concluded, as from its verdict it evidently did, that if Black had intended any fraud in the inclusion of those articles in the list of property lost, he would not have been likely to select the local agent of the insurance company for that purpose. The property, as described in the policy, is "wines, liquors, cigars, beer, soda and mineral water, and all other goods, wares and merchandise not more hazardous," etc. Kayler was questioned, and answered in respect to that matter, as follows:

"Q. Now, Mr. Kayler, in making out this proof of loss, there is some items included that do not seem to be covered by the policy, such as bottles and towels and so on. A. I supposed it was all a part of the stock when I put it down. I never made out any proof of loss. My business is to write it up; the adjuster did that work generally. Q. You sent the proof of loss to the company or adjuster? A. Yes, sir. Q. At the time you included those goods, did you believe that those articles I have called your attention to, that they were covered by the policy? A. Sure. Q. Did you or Mr. Black include them?

"Mr. Cole: We object to that. It is very plain they are not covered by the policy.

"Mr. Langhorne: I do not dispute that. I am not saying that they are covered by the policy.

"(Objection overruled. Exception allowed.)

"Q. When you included these articles, was there any intention on your part to defraud the company? A. No, sir; I supposed everything inside of that saloon was covered."

The plaintiff's testimony was to the same effect. It is true that the defendant company undertook to impeach the veracity of both plaintiff and Kayler, but those were matters for the exclusive determination of the jury.

[2] In respect to the value of the insured property that was destroyed, there was testimony tending to support that of the plaintiff to the effect that in the aggregate it was then of greater value than the amount of the policy. True, there was some testimony and some circumstances tending the other way; but that also was a question for the determination of the jury.

It is not contended that there was any direct evidence to the effect that the fire "was caused by the act, design, or procurement" of the plaintiff, or that there was any fraud in the matter of the fire. The most that can be claimed in that direction is that there were some circumstances tending to support the contention of the defendant company in that regard, the most notable being the fact that the fire occurred nine days after the policy was issued; the testimony on the part of the company tending to show that the insured property was at the time of the fire of considerably less value than the amount of the policy, and that the door of the saloon was unlocked when the fire occurred. But as against that was the evidence on the part of the plaintiff which satisfied the jury of his innocence of wrongdoing in the particulars mentioned, as is evidenced by the verdict.

[3] The further contention is made on behalf of the plaintiff in error, that the policy in suit was rendered invalid by the failure of the assured to perform the other conditions of the policy required to be performed on his part. Those conditions have already been set out. The loss of the insured property having been total, there is, of course, no case for the application of the provisions respecting a loss that is only partial. Nor does it appear that the assured refused to submit to examination under oath before a person named by the defendant company, for, so far as is shown, no such person was so designated for that purpose.

[4] It is insisted, however, that the assured failed and refused to comply with that provision of the policy which required him to "produce for examination all books of account, bills, invoices or other vouchers, or certified copies thereof, if originals be lost, at such reasonable place as may be designated by this company or its representative, and shall permit extracts and copies thereof to be made." A sufficient answer to the contention, in our opinion, is that made by the court below to the effect that the defendant company never designated any representative or any place for such examination. The correspondence that has been set forth shows, as we have said, that the company not only suspected the assured of having either directly burned the insured property or been in some way concerned therein, but also of having sworn falsely in respect to the proofs of loss that he made.

The only objections to those proofs of loss which appear to have been made prior to the institution of the suit are set forth in the letter of September 10, 1912, as follows:

"The list of articles enumerated is only a memorized list and also contains articles which are not items of stock.

"The amount set forth in said list as representing the value are grossly in excess of the true sound value of said articles, alleged to have been destroyed.

"Under the terms and conditions of your policy you are required to exhibit the last authentic inventory taken of your stock or a certified copy thereof. You will also supply bills of purchases of stock since the last said inventory, or if said bills of purchases have been destroyed then certified copies of the original bills.

"You are also required to supply a record of your sales made of stock since the date of inventory above referred to."

In his reply to the affirmative matter set up in the defendant's amended answer, the plaintiff alleged that all of his books of account, bills, invoices, and other papers connected with his business were burned by the fire that destroyed the insured property, and there was testimony given tending to show the truth of those averments. We have examined the record attentively, and do not find in any of the rulings of the trial court, nor in its instructions to the jury, any error for which the judgment should be reversed. Such of the requested instructions as correctly stated the law, and which the court refused to give, were covered by the charge of the court, which, though much too long, as often happens, stated the case fairly to the jury.

The judgment is affirmed.